BARBARA C. AND RAYMOND H. ANDERSON, JR., Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Anderson v. Commissioner
Docket Nos. 29293-88, 7750-90
United States Tax Court
T.C. Memo 1992-130; 1992 Tax Ct. Memo LEXIS 153; 63 T.C.M. (CCH) 2278; T.C.M. (RIA) 92130; March 4, 1992, Filed *153 Decisions will be entered under Rule 155. Petitioners H and W each hold a 25-percent interest in a general partnership. In addition to her distributive share of the partnership's trade or business income, W received guaranteed payments for services rendered. Petitioners argue that only the guaranteed payments constitute self-employment income. R contends that the entire amount received represents W's distributive share of the partnership's taxable income and therefore is subject to self-employment tax. Held, under sec. 1402(a), I.R.C., net earnings from self-employment includes W's distributive share of partnership trade or business income. Raymond H. Anderson, Jr., pro se. Jeanne Gramling, for respondent. GERBER
GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent by means of a statutory notice of deficiency determined the following deficiencies in petitioners' Federal income tax and additions to tax in the following amounts: Additions to Tax
Sec.
Sec.
Sec. Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
6653(a)(1)(A)
6653(a)(1)(B)
1984
$ 7,422.00
$ 378.00
[1] --
--
1985
29,121.60
1,456.08
[2] --
--
1986
3,417.00
--   --
$ 170.85
[2] *154 Additions to Tax
Sec.
Year
6661(a) 1984
--
1985
$ 7,280
1986
--
All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. The issues presented for our consideration are: (1) Whether the period for assessing the deficiency against petitioners for taxable year 1984 expired prior to the date of issuance of the notice of deficiency; (2) whether and to what extent amounts received by petitioner wife in 1985 and 1986 are subject to self-employment tax; (3) should we determine that the amounts received are not subject to self-employment tax, whether petitioner wife is entitled to deductions in 1985 and 1986 for contributions to individual retirement accounts (IRA's); [3] (4) whether State income taxes paid in 1986 on a distribution from a pension and profit-sharing plan received in 1985 *155 constitute State income taxes on business income and therefore are deductible in computing petitioners' net operating loss deduction in 1986; (5) whether petitioners properly claimed a deduction for charitable contributions in 1986; (6) whether and to what extent petitioners are liable for payment of alternative minimum tax in 1984; [4] and (7) whether petitioners are liable for additions to tax for (a) negligence under section 6653(a)(1) and (2) in 1984 and 1985 and under section 6653(a)(1)(A) and (B) in 1986; and (b) substantial understatement of income tax under section 6661(a) in 1985. Petitioners have not contested respondent's adjustment to their 1985 income in the amount of $ 100, attributable to a mathematical error. [5]
*156 FINDINGS OF FACT Some of the facts have been stipulated and the stipulation of facts and attached exhibits are incorporated by this reference. At the time of the filing of the petition herein, petitioners were married and resided in Greensboro, North Carolina. Petitioners filed joint Federal income tax returns for taxable years 1984, 1985, and 1986. Mr. Anderson was employed for 32 years by a company then known as Blue Bell, Inc. (Blue Bell). During the term of his employment, Blue Bell had two pension and profit-sharing plans in which Mr. Anderson participated. Mr. Anderson received a distribution of $ 541,031 from Blue Bell's pension and profit-sharing plan in 1985. On their 1985 Federal income tax return, petitioners treated $ 338,392 of the distribution as subject to capital gains treatment and the remaining $ 202,639 as eligible for 10-year averaging. On Schedule A of their 1986 Federal income tax return petitioners deducted $ 33,577 in State income taxes. In 1983, petitioners started a business named Carlisle's Gifts. In December 1984, petitioners formed a general partnership with Mrs. Anderson's brother and purchased an existing gift store which they renamed Carlisle's *157 Potpourri. The partnership agreement provided that Mrs. Anderson's brother was to furnish his expertise in operating the business and petitioners were to furnish all the capital. Petitioners each held a 25-percent interest in the general partnership. Petitioners' investment, inclusive of loans and capital account, was in excess of $ 100,000. Mrs. Anderson worked full-time at Carlisle's Potpourri during the month of December 1984, while her brother, pursuant to petitioners' instructions, was in the process of closing Carlisle's Gifts. She received and reported compensation of $ 2,664 with respect to her employment for that month. On their 1984 Federal income tax return petitioners reported this amount received by Mrs. Anderson as income subject to self-employment tax. Subsequently, Mrs. Anderson's involvement at the store consisted of her filling in at the store approximately 6-8 days per year when her brother was away on buying trips. In addition, Mrs. Anderson assumed general bookkeeping responsibility. Mrs. Anderson worked at home approximately 60 days in 1985 and 72 days in 1986 performing these bookkeeping functions. In both 1985 and 1986, Mrs. Anderson received a guaranteed *158 payment of $ 2,000 for her services. Inclusive of the guaranteed payments, Mrs. Anderson reported income of $ 16,055 in 1985 and $ 27,780 in 1986 from the general partnership. Petitioners' 1985 and 1986 Federal income tax returns did not reflect any liability for self-employment tax on income Mrs. Anderson received from the partnership. [6] Mr. Anderson's only involvement in the partnership business was his financial investment. Petitioners' Federal income tax return for taxable year 1984 was initially due on April 15, 1985. However, respondent granted an extension of time for filing, and allowed the return to be filed on or before August 15, 1985. Petitioners' return was stamped received by the Memphis Service Center on August 12, 1985. On August 12, 1988, respondent issued a statutory notice of deficiency for 1984 to petitioners. In *159 her statutory notice of deficiency for taxable years 1985 and 1986 respondent disallowed petitioners' deduction of $ 4,000 for contributions to IRA's. For taxable year 1986, respondent also disallowed petitioners' deduction of $ 1,939 for charitable contributions. Respondent further determined that petitioners were liable for alternative minimum tax in 1985 in the amount of $ 25,332.41, and self-employment tax of $ 1,894 in 1985 and $ 3,417 in 1986. Respondent determined additions to tax under section 6653(a) for all 3 years and under section 6661(a) for 1985. OPINION Issue 1. Statute of Limitations
Petitioners' Federal income tax return for taxable year 1984 was initially due on April 15, 1985. However, under requests for extensions of time for filing, granted by respondent, it was required to be filed on or before August 15, 1985. Petitioners' return was stamped received by the Memphis Service Center on August 12, 1985. On August 12, 1988, respondent issued a statutory notice of deficiency for 1984 to petitioners. Petitioners assert that they mailed their return sometime in July and therefore the return should have been received before August 12, 1985. Petitioners *160 contend that because respondent failed to issue the notice of deficiency within the 3-year period prescribed by section 6501, the assessment of the determined deficiency is barred by the statute of limitations. [7] Petitioners offered no evidence of when their return was mailed other then their assertion that they customarily mail their Federal income tax return at the same time as their State income tax return, which was received by the State of North Carolina on July 24, 1985. Section 6501(a) provides that, except as otherwise provided, any tax "shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed)". Although section 6501(a) does not define the term "filed", the longstanding definition of the word "filed" as used in Federal *161 statutes is "delivered". United States v. Lombardo, 241 U.S. 73 (1916); Hotel Equities Corp. v. Commissioner, 65 T.C. 528 (1975), affd. 546 F.2d 725 (7th Cir. 1976). Where a tax return is filed before the due date prescribed by law, it is considered to have been filed on its due date. Sec. 6501(b)(1). Where an extension of time for filing the return is granted, a tax return that is filed prior to the extended due date is considered filed as of the date it is actually received by respondent. Pace Oil Co. v. Commissioner, 73 T.C. 249, 255 (1979). Section 7502 provides in pertinent part: (a) General Rule. -- (1) Date of delivery. -- If any return, * * * required to be filed, * * * within a prescribed period or on or before a prescribed date under authority of any provision of the internal revenue laws is, after such period or such date, delivered by United States mail to the agency, officer, or office with which such return * * * is required to be filed, * * * the date of the United States postmark stamped on the cover in which such return * * * is mailed shall be deemed to be the date of delivery * *162 * * (2) Mailing requirements. -- This subsection shall apply only if -- (A) the postmark date falls within the prescribed period or on or before the prescribed date -- (i) for the filing (including any extension granted for such filing) of the return * * * * * * (B) the return * * * was, within the time prescribed in subparagraph (A), deposited in the mail in the United States in an envelope or other appropriate wrapper, postage prepaid, properly addressed to the agency, officer, or office with which the return * * * is required to be filed * * *
When a taxpayer relies upon the statute of limitations as a bar to assessment, the taxpayer bears the burden of proving the date of filing. Rules 39, 142(a); Knollwood Memorial Gardens v. Commissioner, 46 T.C. 764 (1966). Petitioners have not shown that the August 12, 1985, date was not the date of receipt. Accordingly, the period for assessment had not expired when respondent sent petitioners the notice of deficiency for 1984. Issue 2. Self-Employment Tax
Subsections (a) and (b) of section 1401 impose taxes on the "self-employment income" of every individual. Self-employment income means the "net *163 earnings from self-employment" not in excess of a specified ceiling amount. Sec. 1402(b). Section 1402(a)[8] provides, subject to exceptions not herein relevant, [9] that "net earnings from self-employment" includes a partner's distributive share of partnership trade or business income. *164 Respondent contends that the entire income received by Mrs. Anderson from the partnership in 1985 and 1986 is subject to self-employment tax as it represents her distributive share of the partnership's taxable income. Petitioners contend that Mrs. Anderson's income from the partnership constitutes self-employment income only to the extent of the $ 2,000 guaranteed payment in each of the 2 years. We agree with respondent. It is undisputed that Mrs. Anderson's interest in Carlisle's Potpourri was a general partnership interest. Accordingly, her distributive share of the partnership's trade or business income is, in addition to the $ 2,000 guaranteed payment in each year, subject to the limitations of section 1402(b), subject to the taxes imposed by section 1401 on self-employment income. Cokes v. Commissioner, 91 T.C. 222, 229-230 (1988). [10]
*165 Issue 3. Net Operating Loss Deduction on State Income Taxes Paid on Distribution from Pension or Profit-Sharing Plan
Respondent contends that Mr. Anderson's distribution from his employer's pension and profit-sharing plan was not net income from business profits and therefore State income taxes paid should not be includable as a business deduction in computing petitioners' net operating loss for 1986. Accordingly, respondent allowed the State income tax paid, together with other itemized deductions only to the extent of petitioners' nonbusiness income. Respondent determined that petitioners were entitled to a net operating loss in 1986 of $ 33,240, which was carried back to 1983 and 1984. Petitioners' position is that the State income taxes paid in 1986 on the distribution constitute State income taxes paid on business income, and should be fully deductible in computing the net operating loss deduction for 1986. Mr. Anderson testified that a portion of the State income tax was paid on income received by Mrs. Anderson; however, the record is silent as to what portion of the amount paid is attributable to Mrs. Anderson's income. We must decide whether the State income taxes *166 paid on the distribution are attributable to a trade or business for purposes of calculating petitioners' net operating loss under section 172(d)(4). Section 164(a) provides: (a) General Rule. -- Except as otherwise provided in this section, the following taxes shall be allowed as a deduction for the taxable year within which paid or accrued: (1) State and local, and foreign, real property taxes. (2) State and local personal property taxes. (3) State and local, and foreign, income, war profits, and excess profits taxes. (4) State and local general sales taxes. (5) The windfall profit tax imposed by section 4986.
In addition, there shall be allowed as a deduction State and local, and foreign, taxes not described in the preceding sentence which are paid or accrued within the taxable year in carrying on a trade or business or an activity described in section 212 (relating to expenses for production of income). * * *
For individuals, whether the deductible tax is deducted in computing adjusted gross income or as an itemized deduction depends upon the circumstances under which it is paid or accrued. Sec. 62. If it is paid or accrued in carrying on a trade or business *167 (other than as carrying on the trade or business of being an employee, unless it is reimbursed by the employer) it is deductible in computing adjusted gross income. Sec. 62(a)(1) and (2). Otherwise, it constitutes an itemized deduction. Sec. 63(f). Congress enacted the net operating loss provisions so that the Internal Revenue Code would not require a business with alternating profits and losses "to pay higher taxes over a period of years than a business with stable profits, although the average income of the two firms is equal." H. Rept. 855, 76th Cong., 1st Sess. (1939), 1939-2 C.B. 504, 510. Section 172 allows a taxpayer to carry back and carry over net operating losses, thereby permitting the deduction of a net operating loss incurred in one taxable year from the income derived in other taxable years. In this way, a business is allowed "to set off its lean years against its lush years, and to strike something like an average taxable income computed over a period longer than one year." Libson Shops, Inc. v. Koehler, 353 U.S. 382, 386 (1957). Pursuant to section 172(c), the term "net operating loss" is defined as "the excess of the deductions *168 allowed by this chapter over the gross income", subject to modifications set forth in section 172(d). Specifically, section 172(d)(4) provides, in pertinent part, as follows: (4) Nonbusiness deductions of taxpayers other than corporations. -- In the case of a taxpayer other than a corporation, the deductions allowable by this chapter which are not attributable to a taxpayer's trade or business shall be allowed only to the extent of the amount of the gross income not derived from such trade or business. For purposes of the preceding sentence -- * * * (D) any deduction allowed under section 404 to the extent attributable to contributions which are made on behalf of an individual who is an employee within the meaning of section 401(c)(1) shall not be treated as attributable to the trade or business of such individual.
We agree with respondent. The State income taxes paid on the distribution are not attributable to petitioners' trade or business and therefore are deductible only to the extent of petitioners' nonbusiness income. Issue 4. Charitable Contributions
Respondent determined that petitioners were not entitled to their claimed deduction of $ 1,939 for charitable *169 contributions under section 170. Petitioners bear the burden of proving respondent's determination is in error. Rule 142(a). Petitioners presented no evidence on this issue; therefore, we sustain respondent's determination. Issue 5. Additions To Tax -- Section 6653(a)
Respondent under section 6653(a) has determined additions to tax for 1984, 1985, and 1986. For the years in issue, section 6653(a)(1) and 6653(a)(1)(A) imposes an addition to tax equal to 5 percent of the underpayment if any part of the underpayment is due to negligence or intentional disregard of rules and regulations. Section 6653(a)(2) and 6653(a)(1)(B) imposes a further addition to tax in an amount equal to 50 percent of the interest payable on the portion of the underpayment attributable to negligence or intentional disregard of rules or regulations. For purposes of this statute negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967)). Respondent's determination that *170 petitioners' underpayment of tax was due to negligence or intentional disregard of rules or regulations is "presumptively correct and must stand unless the taxpayer can establish that he was not negligent." Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337. Petitioners, therefore, bear the burden of proving respondent's determination of negligence or intentional disregard of rules or regulations is in error. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791 (1972); Enoch v. Commissioner, 57 T.C. 781, 802 (1972). We conclude that petitioners have failed to meet their burden. Mr. Anderson testified that he has been preparing his own income tax returns for over 30 years and prior to the years in issue he had never been subject to alternative minimum tax. Mr. Anderson testified that he could offer no explanation as to his failure to pay alternative minimum tax in 1984. Petitioners have conceded that they are liable for payment of alternative minimum tax for 1985. Petitioners contend that their failure to accurately report taxes due is in part attributable to Mr. Anderson's *171 misinterpreting the instructions on the return. Petitioners have conceded that the deduction claimed in 1985 and 1986 for Mr. Anderson's contributions to an IRA was improper. Petitioners offered no evidence to support their claimed deduction for charitable contributions in 1986. While we are aware that receipt of a lump-sum distribution from a pension plan and the commencement of a new business enterprise may have presented petitioners with a more complex tax reporting situation then in past years, petitioners' failure to seek professional advice, coupled with Mr. Anderson's testimony as to the vague method by which he calculated his tax liability, demonstrates that petitioners failed to do what a reasonable and prudent person would have done under the circumstances. Issue 6. Addition To Tax -- Section 6661(a)
The final issue for our consideration is whether petitioners are liable for the addition to tax under section 6661. Section 6661 imposes an addition to tax equal to 25 percent of an underpayment attributable to an understatement that exceeds the greater of 10 percent of the tax required to be shown on the return, or $ 5,000. An understatement is defined as the tax *172 required to be shown on the return less the tax shown on the return, reduced by any rebates. Sec. 6661(b). An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). Section 6661(b)(1) and (2) provides that the understatement is reduced in cases where the taxpayer had substantial authority for the position taken on the return or adequately disclosed the relevant facts affecting the item's tax treatment. Respondent has determined that petitioners are liable for an addition to tax pursuant to section 6661 for 1985. Petitioners bear the burden of providing respondent's determination is in error. Rule 142. Petitioners have presented no evidence to the contrary. Therefore, petitioners are liable for the addition to tax under section 6661 for such year if a recomputation under Rule 155 shows that the understatement exceeds the 10 percent of tax required to be shown on the return or $ 5,000. To reflect the foregoing, Decisions will be entered under Rule 155. Footnotes
1. 50 percent of interest due on $ 7,569. ↩
2. 50 percent of interest due on deficiency.↩
3. At trial Mr. Anderson conceded that the individual retirement account (IRA) deductions he claimed in 1985 and 1986 were not justified as his net earnings were zero. Respondent has conceded that should we find that amounts received by Mrs. Anderson are subject to self-employment tax then she would be entitled to a deduction for contributions to IRA. ↩
4. Petitioners have conceded that they are liable for payment of alternative minimum tax for 1985. ↩
5. Respondent determined that on their 1985 amended return petitioners had understated their adjusted gross income by $ 600 and on the same return overstated income by $ 500 on Schedule E. Respondent therefore determined that petitioners' 1985 Federal income tax return reflected a net understatement of $ 100.↩
6. Respondent did not determine self-employment tax for Mr. Anderson for 1985 and 1986 because the income he received from this partnership was offset by other business losses.↩
7. On Apr. 4, 1990, petitioners made an oral motion for summary judgment on the grounds that the statute of limitations expired. This Court issued an order on June 8, 1990, denying petitioners' motion without prejudice.↩
8. Sec. 1402(a) provides, in pertinent part, as follows: SEC. 1402. DEFINITIONS. (a) Net Earnings From Self-Employment. -- The term "net earnings from self-employment" means the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowed by this subtitle which are attributable to such trade or business, plus his distributive share (whether or not distributed) of income or loss described in section 702(a)(8)↩ from any trade or business carried on by a partnership of which he is a member; * * *
9. Petitioners do not contend that Mrs. Anderson's income from the partnership for the years in issue is exempt from the definition of "net earnings from self-employment" because of any of the exceptions contained in sec. 1402(a)↩.
10. Respondent has conceded that should this Court conclude that this income is subject to self-employment tax then Mrs. Anderson would be entitled to deductions of $ 2,000 in 1985 and 1986 for contributions to an IRA. In light of our conclusion that Mrs. Anderson received self-employment income of $ 16,055 in 1985 and $ 27,780 in 1986, we need not address the issue of deductions for contributions to IRA's.↩